A01A1276. BENNETT v. THE STATE.
A01A1277. VOTTA v. THE STATE.
(557 SE2d 29)

ANDREWS, Presiding Judge.

William Bennett and Joseph Louis Votta appeal from the denial of their motions for new trial following their joint trial and convictions for hunting deer over a baited field and hunting without wearing orange. Because the issues in each appeal are the sufficiency of the evidence and whether, under OCGA § 27-3-9 (c), Department of Natural Resources rangers were required to notify Bennett and Votta that the fields were baited and give them an opportunity to post the fields prior to prosecuting them, the appeals are consolidated.

1. Both Bennett and Votta challenge the sufficiency of the evidence. Viewed with all inferences in favor of the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was that Bennett and Votta, both Florida residents and longtime friends, purchased over 100 acres in Randolph County. On this property, they each placed a trailer in which to stay. Additionally, they built eleven deer stands on the property and installed five wildlife feeders which spread corn around the area. Mineral blocks

were also placed around the property.

On September 20, 1997, Corporal Commander of the Department of Natural Resources Law Enforcement Section received a phone call from the owner of property adjoining Bennett and Votta's property advising that he believed the area had been baited. Upon checking the property, rangers found the stands, feed distributors, and mineral blocks. On October 22, three days before the opening of deer hunting season, several rangers returned and observed the same conditions.

On October 25, opening day of deer season, rangers arrived at the property around 8:00 a.m. Both Bennett and Votta were observed in separate deer stands, wearing camouflage clothing and holding loaded high-powered rifles with scopes. Neither man was wearing the fluorescent orange required of hunters. Bennett and Votta contended they were hunting coyotes. Although the rangers had spotted numerous deer tracks on the property, they had not found any coyote tracks.

The evidence was legally sufficient, and denial of their motions for new trial was not error. *Jackson v. Virginia*, supra; *Redding v. State*, 217 Ga. App. 529 (458 SE2d 168) (1995).

2. The remaining enumerations address the trial court's exclusion of evidence regarding, and denial of motions for directed verdict premised upon, their contention that the State's compliance with OCGA § 27-3-9 (c) was a condition precedent to their prosecution for hunting over a baited field.

OCGA § 27-3-9 provides that:

> (a) It shall be unlawful for any person to place, expose, deposit, distribute, or scatter any corn, wheat, or other grains, salts, apples, or other feeds or bait so as to constitute a lure or attraction or enticement for *any game bird or game animal* on or over any area where hunters are or will be hunting.

> (b) Except as otherwise provided by law or regulation, it shall be unlawful for any person to hunt *any game bird or game animal* upon, over, around, or near any place where any such feed or bait has been placed, exposed, deposited, distributed, or scattered so as to constitute a lure, attraction, or enticement to such birds or animals. It shall also be unlawful to hunt *any game animal or game bird* upon, over, around, or near any such place for a period of ten days following the complete removal of all such feed or bait.

> (c) When a conservation ranger is aware or becomes aware that a clearly identifiable area of land or field is *baited for doves in such a manner that hunting thereon would be a violation of subsection (b)* of this Code section, it

shall be the duty of the conservation ranger to require the owner or other person having lawful possession or control of the baited area of land or field to remove such bait. The conservation ranger shall require such owner or other person to erect on the area of land or field signs having printed thereon the words: "No Hunting, Baited Field." Such signs shall remain for ten days after bait is removed. The printing on such signs shall be clearly visible to a person with normal eyesight from a distance of at least 50 yards. A sufficient number of such signs shall be erected to provide reasonable notice to hunters that the field or area is baited. If the conservation ranger cannot locate the owner or other person having lawful possession or control of the baited area of land or field, it shall be the duty of such conservation ranger to erect such signs. The owner or other person having lawful possession or control of a baited area or field who fails to comply with an order of a conservation ranger requiring the removal of bait or the erection of signs, or both, as required by this subsection shall be guilty of a misdemeanor. When a conservation ranger is aware that a clearly identifiable area of land or field is baited in such a manner that hunting thereon would be a violation of subsection (b) of this Code section prior to any such violation, no charge may be brought against any person under subsection (b) of this Code section unless the provisions of this subsection have been followed. Nothing in this subsection shall be construed to preclude the owner or other person having lawful possession or control of a baited area or field from being charged with and convicted of a violation of subsection (a) of this Code section. Nothing in this subsection shall be construed to preclude a person's being charged with and convicted of a violation of subsection (b) of this Code section when such violation is on a baited area of land or field which was not previously identified by a conservation ranger as provided in this subsection prior to such violation.

(Emphasis supplied.)

Appellants argue that the underlined sentence in subsection (c) requires that, before any prosecution for hunting *any* game animal or game bird over a baited field can occur, the rangers must either require the owner to post, or post themselves, the field as provided in subsection (c). This argument, however, overlooks and makes superfluous the italicized portion of subsection (c).

In interpreting statutes, we look "diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy[,]" and the construction that will uphold a stat-

ute in whole and every part is preferred. OCGA § 1-3-1 (a); *Exum v. City of Valdosta*, 246 Ga. 169, 170 (1) (269 SE2d 441) (1980).

Subsection (c) was added to the statute by amendment in 1989. The caption stated that the purpose of the Act was "[t]o amend Code Section 27-3-9 of the Official Code of Georgia Annotated, *relating to the unlawful enticement of doves*, so as to provide that conservation rangers shall be required to require owners . . . having lawful possession or control of baited areas . . . to remove such bait or erect certain signs, or both. . . ." (Emphasis supplied.) Ga. L. 1989, p. 469.

" 'In construing legislation, nothing is more pertinent, towards ascertaining the true intention of the legislative mind in the passage of the enactment, than the legislature's own interpretation of the scope and purpose of the act, as contained in the caption.' (Punctuation omitted.) *Copher v. Mackey*, 220 Ga. App. 43, 45 (4) (467 SE2d 362) (1996)." *Latham v. State*, 225 Ga. App. 147, 149 (483 SE2d 322) (1997).

Obviously, had the legislature intended for this provision to apply to any game animal or bird, it would have so specified.

There was no error.

*Judgment affirmed. Miller, J., concurs. Eldridge, J., concurs in the judgment only.*

DECIDED NOVEMBER 15, 2001.

*James E. Friese*, for appellants.
*Charles M. Ferguson, District Attorney*, for appellee.